IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 23, 2008

Charles R. Fulbruge III
Clerk

No. 06-20939

BOCCHI AMERICAS ASSOCIATES INC

Plaintiff-Appellant

v.

COMMERCE FRESH MARKETING INC; DIRAN A. ELSAIFI

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, DeMOSS, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Plaintiff-Appellant Bocchi Americas Associates, Inc. appeals the district court's entry of judgment in favor of Defendant-Appellee Diran A. Elsaifi. For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

A.     Factual Background

Bocchi Americas Associates, Inc. ("Bocchi"), a Delaware corporation, is a wholesale supplier of fresh fruits and vegetables. Between December 10, 2002, and June 27, 2003, Bocchi sold and delivered twenty shipments of perishable agricultural commodities to Commerce Fresh Marketing, Inc. ("CFM"), a Texas

corporation. The parties have stipulated that CFM failed to pay for many of these deliveries and that CFM owes Bocchi $123,000.

On June 27, 2003, Bocchi sent its last invoice to CFM. CFM claims that on the date of the last invoice, Diran A. Elsaifi ("Elsaifi"), CFM's president and sole shareholder, mailed to Bocchi a check for $2,000 accompanied by a letter requesting that Bocchi accept weekly payments of $2,000 until the full balance was paid. The letter stated, in part,

> Enclosed please find a payment in the amount of $ 2,000.00 to be applied to Commerce Fresh Marketing, Inc.'s account with Bocchi Americas, Inc.. [sic] Pursuant to our agreement, Bocchi Americas Inc.. [sic] will accept partial payments to be applied towards this account, on a weekly basis until the balance of $103,132.85 is paid.
>
> Should the above correctly reflect the terms of our payout agreement, please deposit the check, apply the amount against the account balance, and send a new statement reflecting the new balance due on the account.

Bocchi deposited the check but claims it never received the above-quoted letter. Nevertheless, between July 2003 and October 2004, Bocchi accepted approximately seven additional $2,000 payments and applied them to CFM's unpaid invoices.[1] On December 9, 2003, Bocchi's president, Tom Leonardi, sent a fax to CFM demanding it begin making weekly payments to settle three overdue invoices. The overdue amount was never paid, and on June 23, 2004, Bocchi filed this suit.

On July 13, 2004, CFM again wrote to Bocchi, proposing to make monthly payments of $2,000 until the end of 2004 and monthly payments of $5,000 thereafter. Leonardi responded three days later in a handwritten fax that stated, in part,

---

[1] CFM also made $5,000 payments in November and December of 2004.

> Bocchi Americas does not wish to hinder the operations of Commerce Fresh but the complete balance due of $158,577.00 is to be paid in full immediately.
>
> A set monthly payment has never been agreed nor your proposed $2000.00 monthly payout cannot be deemed acceptable. All files must be paid as invoiced to you as stated.
>
> Don, you have promised to pay complete invoices in full within a year's time and only limited file payments have been done.

On November 10, 2004, Bocchi and CFM entered into an agreement in which Bocchi agreed to dismiss its July 2005 court date in exchange for CFM's promise to pay the outstanding balance of its debt. CFM agreed to make $5,000 monthly payments in November and December 2004, and $20,000 monthly payments thereafter until the remaining balance was paid. CFM made the first two payments but defaulted on the remaining debt. Bocchi then moved forward with this suit.

B.    Procedural History

On June 23, 2004, Bocchi filed this suit against CFM and Elsaifi, alleging common law breach of contract and seeking damages under the Perishable Agricultural Commodities Act of 1930 ("PACA"), as amended, 7 U.S.C. § 499a, et seq. By consent of the parties, a magistrate judge conducted all proceedings in this case, including a bench trial and entry of final judgment. See 28 U.S.C. § 636(c).

On October 6, 2006, the magistrate judge entered final judgment on behalf of Bocchi and against CFM, awarding $123,000 plus prejudgment interest, postjudgment interest, and attorneys' fees. However, the magistrate judge ruled that Bocchi waived its rights to special trust protection under PACA and that therefore, there was no basis for judgment against Elsaifi. Bocchi filed this timely appeal, challenging the magistrate judge's conclusion that Bocchi waived its rights under PACA.

C.    Statutory Scheme

Congress originally enacted PACA "to regulate the sale of perishable commodities and promote fair dealing in the sale of fruits and vegetables." Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 413 (5th Cir. 2003) (internal quotation marks omitted).  PACA requires buyers of produce to make "full payment promptly."   7 U.S.C. § 499b(4).  If a buyer fails to do so, the seller may file a complaint with the United States Department of Agriculture or file a civil suit against the buyer.[2]  Id. § 499e(a), (b).

In 1984, Congress amended PACA to strengthen the rights of sellers of perishable commodities on short-term credit.  See Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A., 362 F.3d 33, 37 (2d Cir. 2004).  PACA now gives these sellers two powerful tools with which to enforce buyers' payment obligations. First, PACA creates, immediately upon delivery of the produce, a nonsegregated "floating" trust in favor of unpaid sellers, which attaches to the products themselves and any proceeds. 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(b); see also Reaves, 336 F.3d at 413.  If the seller is not paid promptly, the buyer must preserve trust assets, and the seller has a "superpriority" right that trumps the rights of the buyer's other secured and unsecured creditors.  Reaves, 336 F.3d at 413.

Second, PACA imposes secondary liability on persons who are in a position to control the trust assets and fail to do so.  Golman-Hayden Co. v. Fresh Source Produce Inc., 217 F.3d 348, 351 (5th Cir. 2000).  Thus, if the buyer's assets are insufficient to satisfy the seller's claim, this provision allows a seller to seek

---

[2] More specifically, the buyer may enforce its PACA trust rights either by seeking a reparation order from the Secretary of Agriculture and subsequent judicial enforcement, 7 U.S.C. §§ 499f, 499g, or through a civil suit against the buyer for breach of fiduciary trust, 7 U.S.C. § 499e(c)(5).

payment from the buyer's principals, individually.[3] That power is particularly important in cases such as this where the corporate buyer is no longer in business, and a common-law breach of contract claim only would yield an unenforceable judgment.[4]

In order to take advantage of these powers, however, the PACA statute and regulations set forth specific rules that sellers must follow. Relevant to this appeal, PACA applies only to produce sold on a short-term credit basis, in accordance with the statute's "full payment promptly" provision. See 7 U.S.C. § 499b(4). "Full payment promptly" means payment within ten days after the buyer accepts the produce. See 7 C.F.R. § 46.2(aa)(5),(11). However, a buyer and seller may agree to extend the time for payment, as long as the aggregate time for payment does not exceed thirty days after the buyer receives and accepts the commodities. Id. § 46.46(e)(2). Therefore, if a seller of produce agrees to extend the time for payment more than thirty days following delivery and acceptance of the produce, the seller may no longer assert any right to a PACA trust or seek recovery from a principal of the buyer. See Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 206 n.9 (3d Cir. 1998). Under this rule, the magistrate judge in this case found that Bocchi and CFM had entered into an such an agreement, and therefore, Bocchi's right to PACA trust protection was lost.

## II. STANDARD OF REVIEW AND JURISDICTION

We review the district court's findings of fact for clear error and conclusions of law de novo. Lewis v. Dretke, 355 F.3d 364, 366 (5th Cir. 2003).

---

[3] Although similar in effect, this provision does not derive from a "piercing of the corporate veil" theory. Rather, this individual liability is premised on the breach of the individual's fiduciary duty to protect PACA trust assets. See Golman-Hayden, 217 F.3d at 351 n.18. In this case, Bocchi uses this provision to seek recovery directly from Elsaifi.

[4] CFM filed for Chapter 7 bankruptcy liquidation on November 17, 2007.

We have jurisdiction to hear an appeal of the final judgment of a district court under 28 U.S.C. § 1291.

## III. DISCUSSION

PACA imposes a strict set of requirements on produce sellers seeking to benefit from the law's protections. Relevant to this appeal is the rule that a seller may enter into a pre-transaction payment agreement and still qualify for PACA trust protection only if the agreement does not extend the date for payment beyond thirty days after the buyer's receipt and acceptance of the commodities. 7 C.F.R. § 46.46(e)(1)-(2). Notably, the PACA statute and regulations explicitly refer only to pre-transaction agreements. See, e.g., 7 U.S.C. § 499e(c)(3) ("The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days . . . (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction . . . ." (emphasis added)); 7 C.F.R. § 46.46(e)(1) ("Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction . . . .").

The PACA statute and Fifth Circuit precedent are silent on whether the thirty-day limit also applies to agreements made after the buyer and seller have entered into the transaction. However, five circuits have held that the thirty-day limit does apply to post-transaction agreements. See Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A., 362 F.3d 33, 43-44 (2d Cir. 2004); Overton Distribs., Inc. v. Heritage Bank, 340 F.3d 361, 366-68 (6th Cir. 2003); Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc., 307 F.3d 666, 669-71 (7th Cir. 2002); Greg Orchards & Produce, Inc. v. Roncone, 180 F.3d 888, 892 (7th Cir.

1999); Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 208-09 (3d Cir. 1998); In re Lombardo Fruit & Produce Co., 12 F.3d 806, 809-10 (8th Cir. 1993). Following the overwhelming weight of authority, and in conformance with the underlying purpose of PACA, we hold that the thirty-day limit extends to post-transaction agreements.

In enacting the PACA statute, Congress sought to provide trust protections only to sellers extending short-term credit to buyers:

> [T]he committee does not intend the trust to apply to any credit transaction that extends beyond a reasonable period. Under the bill, the Secretary is required to establish, through rulemaking, the time by which, the parties to a transaction must agree payment on a transaction must be made, to qualify it for coverage under the trust. An agreement for payment after such time will not be eligible to receive the benefits of the trust.

H.R. REP. NO. 98-543, at 7 (1983), as reprinted in 1984 U.S.C.C.A.N. 405, 410. PACA regulations set that "reasonable period" at thirty days following delivery of the produce and acceptance by the buyer. 7 C.F.R. §§ 46.46(e)(1)-(2), 46.2(aa)(5), (11).

PACA also requires sellers, in the event of default, to promptly pursue judicial and administrative remedies. Am. Banana, 362 F.3d at 38. "The sellers' prompt resort to administrative remedies was intended to isolate and to put pressure on financially insecure buyers to meet their obligations or to be forced from the business." Id. The primary objective of this requirement is to protect sellers from volatility in the produce industry, where producers and shippers were, at least at the time PACA was first enacted, predominantly small businesses. See id. at 44 (citing H.R. REP. NO. 98-543, at 2-4).

Failing to apply the waiver rule to post-default agreements could actually encourage long-term credit arrangements, because sellers could offer longer-term forbearance to delinquent buyers with the knowledge that the seller would

still be protected by the PACA trust. Such a result would undermine PACA's intent—which is to protect small sellers who need prompt payment to survive—and would unfairly benefit PACA sellers with respect to other secured and unsecured creditors of the defaulting buyer.[5] Based on the clear policy of the PACA statute, we conclude that a PACA seller does not lose PACA benefits by entering into a post-transaction agreement to extend credit terms for up to thirty days following delivery and acceptance, but the seller does forfeit its PACA trust protections if such an agreement extends payment beyond thirty days after delivery and acceptance of the commodities in question.[6]

Now that we have determined that a post-transaction agreement may waive PACA trust rights, we consider whether the parties in this case entered into such an agreement. The magistrate judge found sufficient evidence to prove the existence of an oral agreement and, in the alternative, a written agreement.[7]

The question of whether an oral agreement is sufficient to effect a waiver

[5] In addition, contrary to PACA's purpose, allowing a PACA trust-protected seller to receive payments beyond thirty days while retaining its trust protections would actually increase uncertainty in the agriculture market. A buyer's other secured and unsecured creditors would face the possibility of a seller asserting its PACA trust superpriority rights far into the future. In the meantime, those creditors would see the PACA-protected seller extracting preferential payments from the already-delinquent buyer.

[6] Bocchi argues that In re Baiardi Chain Food Corp., PACA Docket No. D-01-0023 (U.S.D.A. 2005), dictates the opposite result and that this U.S.D.A. decision is entitled to deference as an agency interpretation of a statute. The Baiardi case, however, involves a question of whether a buyer complied with the "full payment promptly" provision in PACA and does not involve a question of waiver of trust provisions by agreement. Therefore, Baiardi has no bearing on these facts.

[7] The magistrate judge concluded, based on the record, that Bocchi must have made a "business decision" to agree to extend payment beyond thirty days, thereby waiving its trust protections. Indeed, Bocchi's accounts receivable manager testified at trial: "I believe Bocchi was giving Commerce Fresh a chance to pay." As the parties explained at oral argument, Bocchi had reason to believe it stood a better chance of recovering on CFM's debt by allowing the buyer more time to pay. If Bocchi had sought immediate enforcement of the debt—as PACA requires—CFM likely would have been forced into bankruptcy, and Bocchi presumably would have recovered little.

or forfeiture of PACA trust rights is an issue of first impression in our circuit. However, three of the four circuits that have expressly addressed the issue have held that only written agreements can effect such a waiver. See Patterson, 307 F.3d at 669-70; Idahoan Fresh, 157 F.3d at 205; Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 781-82 (8th Cir. 1991). To date, the Second Circuit is the only one to hold that oral agreements suffice to waive PACA trust protection. Am. Banana, 362 F.3d at 46-47. We agree with that majority of circuits and adopt the rule that waiver or forfeiture of PACA trust rights by entering into an extension agreement requires an agreement in writing.[8] We next consider, therefore, whether the parties in this case entered into such a written agreement.

First, we must decide what type of writing would be sufficient to prove a written agreement. The Seventh Circuit has held that a formal written agreement is not required to waive the seller's rights under PACA; rather, all that is required are writings sufficient to satisfy the statute of frauds. Patterson, 307 F.3d at 671. In Patterson, the court reasoned that because a PACA trust can be created by letters, invoices, and other informal writings, the trust provisions may also be waived by informal writings. Id. at 671. Other courts considering this question have followed Patterson's approach. See, e.g., Am. Banana, 362 F.3d at 47; In re Dixie Produce & Packaging, L.L.C., 368 B.R. 533, 536 (Bankr. E.D. La. 2007). We find this reasoning persuasive. Therefore, we conclude all that is needed to evidence an agreement are writings sufficient to satisfy the applicable statute of frauds.

Next, we consider whether the writings in this case satisfy the statute of frauds. To satisfy the Texas statute of frauds, a promise may be evidenced by a "memorandum of" the promise that is (1) in writing and (2) signed by the party

---

[8] As we hold that an oral agreement will not suffice, we do not review the magistrate judge's evidentiary ruling on the existence of an oral agreement.

to be charged with the promise. TEX. BUS. & COM. CODE ANN. § 26.01(a). Writings between parties must be complete within themselves as to every material detail and contain all the essential elements of the agreement. Cohen v. McCutchin, 565 S.W.2d 230, 232 (Tex. 1978). The statute of frauds writing requirement may be satisfied by two or more documents. Padilla v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995). Further, the "memorandum" need not embody all of the terms agreed upon. Botello v. Misener-Collins Co., 469 S.W.2d 793, 794-95 (Tex. 1971).

In the instant case, there are a number of writings, which, taken together, evidence an agreement between Bocchi and CFM to extend payment beyond thirty days. For example, the June 27, 2003 letter from CFM was an explicit offer. The letter specified a means of acceptance of the offer: cashing the enclosed $2,000 check. Although the magistrate judge made no explicit finding on whether Bocchi actually received this letter, the magistrate judge did make a factual finding that it was standard procedure between the parties to construe a failure to respond to an offer as an acceptance. Nevertheless, this letter alone would not satisfy the statute of frauds as against Bocchi because it lacks a signature from Bocchi's representative.

Taken together with Leonardi's July 16, 2004 fax, however, these writings satisfy the statute of frauds. The July 2004 fax provides evidence of an explicit agreement: "Don, you have promised to pay complete invoices in full within a year's time and only limited filed payments have been done." The handwritten fax lacks a formal signature, but Leonardi's name is written in the "From" field and the fax is written under Bocchi corporate letterhead. See TEX. BUS. & COM. CODE ANN. § 1.201(b)(37) ("'Signed' includes using any symbol executed or adopted with present intention to adopt or accept a writing"); Fulshear v. Randon, 18 Tex. 275, 277 (1857) ("If he writes his name in any part of the agreement, it may be taken as his signature, provided it was there written for

the purpose of giving authenticity to the instrument, and thus operating as a signature.").

To evidence an agreement, the writings must satisfy all the elements of contract formation under Texas law: offer, acceptance, and a "meeting of the minds." Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex. App. 2002). "An offer results in a binding contract upon acceptance by the other party according to its terms." Fail v. Lee, 535 S.W.2d 203, 208 (Tex. App. 1976). Performance of the act which the offeree was requested to promise to perform may constitute valid acceptance. Thomas v. Reliance Ins. Co., 617 F.2d 122, 128 (5th Cir. 1980).

Bocchi contends that the acceptance and meeting of the minds elements are missing from the record documents. Nevertheless, we find sufficient evidence of these elements in the above-described writings. Bocchi's agreement is evidenced by its acceptance of the initial $2,000 check and at least seven additional payments, as well as Leonardi's statement in his July 2004 fax explicitly referencing the agreement. Accordingly, we find there is sufficient evidence of a written agreement to satisfy the statute of frauds, and therefore Bocchi has waived its PACA trust rights.[9] As a result, Bocchi has no cause of action against Elsaifi under PACA.

## IV. CONCLUSION

We find that Bocchi waived its right to PACA trust protection by entering into a written post-transaction agreement to allow CFM to make payments beyond thirty days after delivery of the produce. Therefore, we AFFIRM the magistrate judge's judgment in favor of Elsaifi.

AFFIRMED.

---

[9] Because we find sufficient written evidence of an agreement in these writings, we need not consider whether the November 2004 agreement may be considered as evidence of Bocchi's willingness to agree to a payment period in excess of thirty days.