**STOWE POTATO SALES, INC., Appellant,**

v.

**TERRY'S, INC., Appellee.**

No. CIV.A. 98–0104–A.

United States District Court, W.D. Virginia, Abingdon Division.

July 6, 1998.

James E. Green, Green and Hale, Bristol, TN, for Plaintiffs.

Robert T. Copeland, Copeland, Molinary & Bieger, Abingdon, VA, G. Walter Bressler, Bressler, Curcio & Stout Bristol, VA, for Defendants.

## OPINION

JONES, District Judge.

The question in this case is whether a supplier of agricultural commodities is barred from the benefits of the statutory trust established by the provisions of the Perishable Agricultural Commodities Act [1] on the ground that the time for payment allowed by the supplier exceeded the time limits established by the Secretary of Agriculture's regulations.[2] I hold that the supplier is not disqualified from the benefits of the trust, and thus reverse the decision of the bankruptcy court.

### I. Background.

The appellee, Terry's, Inc. ("Terry's") is a corporation engaged in the business of producing and selling snack foods, including potato chips. It is a dealer in agricultural products and is so licensed by the Department of Agriculture. Stowe Potato Sales, Inc. ("Stowe") has sold potatoes to Terry's for use in Terry's business. Between October 4, 1997, and January 19, 1998, Stowe delivered to Terry's $98,857.33 worth of potatoes, of which sum $88,857.33 remains unpaid.

On March 2, 1998, Terry's filed a petition seeking protection under Chapter 11 of the Bankruptcy Code. On March 9, 1998, Stowe filed a complaint in the bankruptcy proceeding, seeking to impose a statutory trust for its benefit on Terry's assets. Terry's answered, admitting the debt, but denying the trust. It also counterclaimed for return of an alleged preferential payment in the amount of $10,000.

The parties agreed in the bankruptcy court to an expedited trial date of April 7, 1998, on the complaint. Following post trial briefing, the bankruptcy court, by opinion and order dated June 3, 1998, denied relief on the ground that Stowe did not qualify for the benefits of the statutory trust. This appeal by Stowe followed.

The parties requested and obtained expedited briefing in this appeal and waived oral argument. The case is now ripe for decision,

---

1. 7 U.S.C.A. §§ 499a–499s (West 1980 & Supp. 1998) ("PACA").

2. 7 C.F.R. §§ 46.1–46.49 (1998).

based on the record before the bankruptcy court.

## II. Jurisdiction.

As a preliminary matter, I must determine the jurisdiction of this court to hear the present appeal.

Terry's initially filed a motion to dismiss the appeal, contending that the bankruptcy court's order was not final and appealable, since it did not decide the issue raised in the counterclaim filed by Terry's. While Terry's has agreed to withdraw its motion to dismiss so that the issues on Stowe's appeal may be determined on their merits, I must determine sua sponte whether jurisdiction in this court exists.

■ Even though the bankruptcy court's order did not determine all of the issues in the adversary proceeding, I will exercise my discretion and grant an interlocutory appeal.[3] It is clear that the bankruptcy court's ruling below involved a controlling question of law in the adversary proceeding, the determination of which. would materially advance the progress of the proceeding.[4]

■ While no specific request for leave to take an interlocutory appeal has been made, I may grant such leave on the basis of the timely notice of appeal.[5] Accordingly, I find that jurisdiction exists for this appeal.

## III. Facts.

■ The facts are not in dispute, and the bankruptcy court's ruling was on a matter of law. Accordingly, its conclusions are subject to de novo review.[6]

In 1930 Congress enacted PACA, an act which "provides aid to [agricultural] traders in enforcing their contracts." [7] In 1984 PACA was amended to better assure that suppliers of produce are paid by imposing a statutory trust on all produce-related assets held by agricultural merchants, dealers and brokers.[8] The trust, which must be maintained for the benefit of unpaid suppliers, sellers or agents who provided the commodities, was designed to be "a self-help tool [to] enable them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." [9]

A supplier is entitled to protection only if it files adequate notice of its intent to preserve trust benefits. The statute contains two methods of giving such notice:

(3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary.... When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

(4) In addition to the method of preserving the benefits of the trust specified in paragraph (3), *a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust.* The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these com-

---

**3.** 28 U.S.C.A. § 158(a)(3) (West 1993 & Supp. 1998).

**4.** *See* 28 U.S.C.A. § 1292(b) (West 1993).

**5.** Fed. R. Bankr.P. 8003(c).

**6.** *United States v. Easley,* 216 B.R. 543, 545 (W.D.Va.1997).

**7.** 49 Fed.Reg. 45735, 45737 (1984).

**8.** 7 U.S.C.A. § 499e(c)(2) (West Supp.1998).

**9.** 49 Fed.Reg. at 45737.

modities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."[10]

Stowe elected to use the alternative method of providing notice, through post-delivery invoice statements. The invoices sent by Stowe to Terry's contained the precise quoted language required by subsection (4). The invoices also contained the following statements: "payment terms: NET 30" and "finance charge of 1½% per month (18% per year) will be added to all accounts past due 30 days."

The regulations adopted by the Secretary of Agriculture pursuant to PACA mirror the statute and contain certain additional requirements. The regulations provide, in pertinent part:

(e)(1) The times for prompt accounting and prompt payment are set out in § 46.2(z) and (aa). Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.

(2) The maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance of the commodities as defined in § 46.2(dd) and paragraph (a)(1) of this section.

. . .

(f)(3) Licensees may chose [sic] an alternate method of preserving trust benefits from the requirements described in paragraphs (f)(1) and (2) of this section. Licensees may use their invoice or other billing statement to preserve trust benefits. The alternative method requires that the licensee's invoice or other billing statement, given to the debtor, contain:

(i) The statement: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."; and

(ii) The terms of payment if they differ from prompt payment set out in section 46.2(z) and (aa) of this part, and the parties have expressly agreed to such terms in writing before the affected transactions occur.[11]

The parties agree that there was no written agreement changing the times for payment from that established by the regulations.[12] Based on that fact, the bankruptcy court held that the language "NET 30" on the invoices fixed a payment term contrary to that established by the regulation.[13] Since there was no prior written agreement of the parties, the bankruptcy court reasoned, the invoices did not qualify as proper notice of intent to preserve the trust, as required by PACA. In addition, the bankruptcy court held that the finance charge language on the invoices effectively extended the payment term beyond thirty days, and thus, by virtue of the maximum thirty-day payment regulation,[14] Stowe did not qualify for coverage under the trust.

### IV. Analysis.

■ The resolution of this appeal may have considerable effect on the course of Terry's Chapter 11 proceeding, since, as the

---

**10.** 7 U.S.C.A. § 499e(c)(3) & (4) (emphasis added).

**11.** 7 C.F.R. § 46.46(e) & (f).

**12.** The regulations provide that payment on a purchase is presumed to be due within 10 days of the date the commodity is accepted by the buyer. 7 C.F.R. § 46.2(aa)(5).

**13.** While there was no direct evidence as to the meaning of the words, the bankruptcy court assumed that "NET 30" meant that payment was expected within 30 days, and the parties do not contest that interpretation.

**14.** 7 C.F.R. § 46.46(e)(2).

bankruptcy court correctly noted, PACA trust assets are excluded from the bankruptcy estate.[15]

While the wisdom of such a preference to sellers of agriculture commodities may be rightly questioned,[16] there is no question of the statute's effect, or of Congress' power to enact it. Accordingly, I have no choice but to enforce the statute as written, regardless of the resulting hardship in a particular case.

■ The question before me is one of statutory construction, turning upon the plain meaning of the words used in PACA and its regulations. While the parties disagree as to whether PACA as a whole should be "strictly" or "liberally" construed, such interpretation is relevant only where the exact meaning of a statute cannot be ascertained from the language used.[17] In this case, I have no difficulty in ascertaining the statutory meaning.

■ Since Stowe elected to give notice of its intent to preserve trust benefits via its invoices, the statutory language clearly provides that Stowe must lose the benefits of the statutory trust if such notice was inadequate.[18] Because the parties did not have a pre-transaction written agreement changing the times for payment, it is equally clear that the terms of payment were not required to be set forth on the invoice. Since the invoices contained all of the other required language, notice was properly given.

PACA and its regulations require that the invoice notice set forth the payment terms only if there is a pre-transaction written agreement. Regardless of whether the parties had an oral understanding that payment was due within thirty days, the payment terms can be extended beyond those established by regulation only by such a written agreement. Accordingly, it would be incongruous to require the invoice notice to set forth non-binding payment terms.[19]

Terry's reliance on *Goldman Fruit & Produce Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit & Produce Co.)* [20] is misplaced. In *Lombardo* the parties had agreed to a payment date of thirty days, rather than the ten days established by the regulations, but the seller could not prove that the agreement had been reduced to writing prior to the transaction. The seller did not use the alternative method of invoice notice, but attempted to provide notice after the time for payment had expired. The court found that the seller had failed to prove the existence of a written agreement fixing the time for payment, and had waived any claim that the ten-day regulation period applied. Accordingly, the court held that the notice of intent to rely on the trust was untimely.[21]

This case does not involve any question of the timeliness of Stowe's PACA notice, but solely its sufficiency. The fact that the parties had no written agreement does not of itself invalidate the notice. No provision of the statute or regulations disqualifies a seller simply because no written agreement exists extending the payment terms.[22]

■ The bankruptcy court also held that Stowe was disqualified from trust benefits because the maximum time for payment to which it had agreed was more than thirty days. I also find this legal conclusion erroneous.

The Secretary of Agriculture's regulations expressly provide that the maximum time for payment to which a seller can agree and still

**15.** See *N.P. Deoudes, Inc. v. Snyder (In re Snyder)*, 171 B.R. 532, 536–37 (Bankr.D.Md.1994), *rev'd on other grounds*, 184 B.R. 473 (D.Md.1995).

**16.** See *Merrill Farms Corp. v. H.R. Hindle & Co. (In re H.R. Hindle & Co.)*, 149 B.R. 775, 785 (Bankr.E.D.Pa.1993).

**17.** 3 Norman J. Singer, *Sutherland Statutory Construction* § 57.03 (5th ed.1992).

**18.** 7 U.S.C.A. § 499e(c)(4).

**19.** While the "NET 30" payment terms on the invoices were thus likely unenforceable, there is no evidence that Terry's was misled to its prejudice by the use of the language.

**20.** 12 F.3d 110 (8th Cir.1993).

**21.** *Id.* at 113.

**22.** See *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 782 (8th Cir.1991).

qualify for trust coverage is thirty days.[23] The question is thus whether the language of the invoices showed that Stowe had agreed to payment beyond thirty days.

A similar situation arose in *Wilson Mushroom Co. v. Davis Distributors, Inc. (In re Davis Distributors, Inc.).*[24] In that case a contract provided that if the buyer did not pay within sixty days, it was "in default" and the seller was thus entitled to exercise all of its contract and legal remedies. The Fourth Circuit held that the contract clearly extended the payment period, even though the contract also provided that the buyer was to pay all invoices in full "within thirty ... days of the date of the invoice."[25] As the Fourth Circuit explained,

> [a] contract simply cannot be read to "require" payment within thirty days if it explicitly postpones default and all of the attendant consequences for sixty days.[26]

Here, to the contrary, there is no evidence that Stowe could not enforce its right to payment if an invoice was not paid within thirty days, even though finance charges might not be due for another thirty days. Accordingly, there was no violation of the regulations.

## V. *Conclusion.*

For the aforementioned reasons, I will reverse the decision of the bankruptcy court that Stowe is disqualified from PACA trust protection. Since the bankruptcy court, by virtue of its ruling, did not have occasion to consider the proper remedy, I will remand the case for further proceedings consistent with this opinion.

---

23. 7 C.F.R. § 46.46(e)(2).

24. 861 F.2d 416 (4th Cir.1988).

25. *Id.* at 417–420.

26. *Id.* at 419.