**PRODUCE ALLIANCE,
et al., Plaintiffs,**

v.

**LET–US PRODUCE, et al., Defendants.**

**Civil Action No. 2:10cv198.**

United States District Court,
E.D. Virginia,
Norfolk Division.

March 31, 2011.

Mary Jean Fassett, McCarron & Diess, Washington, DC, for Plaintiffs.

Ann Burke Brogan, Karen M. Crowley, Crowley Liberatore & Ryan, P.C., Chesapeake, VA, John Dinshaw McIntyre, Wilson & McIntyre, PLLC, Norfolk, VA, for Defendants.

### OPINION AND ORDER

JEROME B. FRIEDMAN, Senior District Judge.

This matter is before the court on a motion for interim distribution of proceeds, filed by a large group of plaintiffs/claimants pursuant to the "Consent Injunction and Agreed Order Establishing PACA Trust Claims Procedure" ("Claims Procedure Order") previously entered in this case.[1] (Dkt. No. 32.) Pursuant to the Claims Procedure Order, numerous plain-

---

1. Senior United States District Judge Robert G. Doumar presided over this case until it was reassigned to the undersigned Judge. Judge Doumar signed the Claims Procedure Order.

tiffs filed proof of claims documenting unpaid receivables arising from produce sales to defendant Let–Us Produce Inc. ("Let–Us Produce"). Defendants, including intervener defendant SunTrust Bank ("Sun Trust"), were then provided with an opportunity to dispute such claims. After the filing of objections, as well as responses thereto, this court conducted a hearing on the pending motion. Based on the arguments set forth in writing and on the record, the court hereby **GRANTS,** in part, and **DENIES,** in part, the motion for interim distribution. As set forth below, although an interim distribution is not ordered at this time, the instant opinion resolves numerous legal issues impacting the validity of the claims asserted by the majority of the plaintiffs.

## I. Factual and Procedural Background

It is undisputed that the numerous plaintiffs in this action sold produce to defendant Let–Us Produce on credit and that defendant accepted the shipments of produce but failed to remit payment on all invoices currently before the court. As discussed in detail below, the acceptance of such produce on short-term credit resulted in plaintiffs potentially qualifying as beneficiaries in a statutory trust designed to protect produce suppliers pursuant to The Perishable Agricultural Commodities Act ("PACA"). 7 U.S.C. § 499e(c).

The consent Claims Procedure Order was entered in this case in an effort to identify all *valid* PACA trust claims and to efficiently and cost effectively distribute available funds to PACA claimants. Specifically, the Claims Procedure Order indicates:

> The parties agree that this Order is reasonable and necessary to provide a procedural framework for the *orderly liquidation of Let–Us Produce, Inc.'s PACA Trust Assets and FF & E,* and to

review, qualify and satisfy any and all claims against the PACA Trust Assets, *to maximize the recovery for all unpaid beneficiaries of the PACA trust and SunTrust Bank,* and to ensure the rights of all potential claimants are efficiently addressed in a single proceeding without the expense of administering multiple separate actions to enforce Let–Us Produce, Inc.'s obligations to all potential PACA trust beneficiaries and SunTrust Bank.

(Claims Procedure Order 3–4, Dkt. No. 32) (emphasis added).

On May 6, 2010, the instant action was filed by Produce Alliance LLC ("Produce Alliance") against defendants Let–Us Produce and its principal, David Millison ("Millison"). Numerous additional produce suppliers that are similarly owed money on produce sold on credit to Let–Us Produce are now parties to this litigation, as is intervener defendant Sun Trust, a secured creditor of Let–Us Produce. Pursuant to the Claims Procedure Order, following the expiration of the period to file proof of PACA claims, objections thereto, and replies, several plaintiffs filed the instant joint motion for interim distribution of funds held in the Let–Us Produce operating account. Defendants oppose such motion, as they allege that the majority of the claimants do not have valid PACA trust claims. The court held a hearing on the pending motion, at which the parties advanced numerous legal arguments regarding the validity of the PACA trust claims. The court addresses such arguments herein.

## II. Analysis

### A. PACA Statute and Regulations

PACA is a remedial statute that was enacted in an effort to protect produce suppliers facing unique business risks due

to the perishable nature of their products. As explained by the Fifth Circuit:

> PACA was enacted in 1930 to regulate the sale of perishable commodities and promote fair dealing in the sale of fruits and vegetables. In 1984, PACA was amended to extend its protection to sellers of perishable commodities, who, because of the need to sell their products quickly, were often unsecured creditors of buyers whose creditworthiness they were unable to evaluate before the sale. To remedy this burden on commerce in perishable commodities, Congress added the provisions in [7 U.S.C.] § 499e, which create, immediately upon delivery, a nonsegregated "floating" trust in favor of sellers on the perishable commodities sold and the products and proceeds derived from the commodities. If the seller is not paid promptly, the trust assets must be preserved and the seller's claims prime those of other secured and unsecured creditors for the full amount of the claim.

*Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410, 413 (5th Cir.2003) (internal quotation marks and footnotes omitted). At issue in this case is whether the outstanding money owed to claimants qualifies for protection under the floating PACA trust.

The PACA statute states that a "burden on commerce in perishable agricultural commodities" results from produce purchasers granting lenders a security interest in perishable commodities before the seller of such commodities is fully paid. 7 U.S.C. § 499e(c)(1). Subsection (c) of § 499e is "intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest." *Id.* The statute creates a trust in favor of produce suppliers through the following two provisions:

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, *shall be held* by such commission merchant, dealer, or broker *in trust for the benefit of all unpaid suppliers or sellers of such commodities* or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. . . .

(3) The unpaid supplier, seller, or agent *shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust* to the commission merchant, dealer, or broker *within thirty calendar days* (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, *as the parties have expressly agreed to in writing before entering into the transaction,* or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

7 U.S.C. § 499e(c)(2)-(3) (emphasis added). As highlighted above, an unpaid produce supplier that qualifies for PACA trust protection shall lose the benefits of such trust if *timely notice* of an intent to preserve trust benefits is not made. It is undisputed that the "default" prompt payment period applicable to the instant dispute is 10 days from the acceptance of a produce shipment. As stated in subsection § 499e(c)(3)(i), notice of intent to preserve trust benefits is timely if made within 30 days after expiration of the 10–day default payment period. *See* 7 C.F.R. § 46.2(aa), 7 U.S.C. § 499e(c)(3)(i). In the alternative, if the parties entered into a *written* agreement *prior to* conducting a produce transaction, notice is timely if made within 30 days after the expiration of the payment period set forth in the writing. 7 U.S.C. § 499e(c)(3)(ii).

As promulgated by the United States Department of Agriculture ("USDA"), an excerpt from the applicable regulations provides as follows:

(e) Prompt payment and eligibility for trust benefits.

(1) The times for prompt accounting and prompt payment are set out in § 46.2(z) and (aa). Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.

(2) The maximum time for payment for a shipment to which a seller, supplier, or agent can agree *and still qualify for coverage under the trust* is 30 days after receipt and acceptance of the commodi-

ties as defined in § 46.2(dd) and paragraph (a)(1) of this section.

7 C.F.R. § 46.46(e)(1)-(2) (emphasis added). As highlighted in the regulation, an unpaid supplier that otherwise qualifies for PACA trust protection loses the benefits of the trust if such supplier *agrees to extend credit for more than 30 days* beyond acceptance of the perishable commodities. Such express invalidation of the trust in subsection (e)(2) is similar to the statutory provision invalidating the trust in the absence of timely notice. It is thus notable that subsection (e)(1), discussing the so-called "writing requirement," does not similarly incorporate language indicating that a failure to comply with such provision invalidates the PACA trust.

### B. Undisputed/Valid Claims

Here, because it is undisputed that numerous produce suppliers were not paid for produce sold to defendant Let–Us Produce, the Claims Procedure Order was designed, in part, to identify all valid PACA claims. Pursuant to such Order, any proof of claim "to which no objection has been filed by the objection date, *shall be deemed a valid PACA trust claim* for the amount stated in the Proof of Claim." (Claims Procedure Order 11) (emphasis added). As no objections were filed regarding claims advanced by six produce suppliers, the following plaintiffs have valid PACA trust claims in the following amounts:

| | |
|---|---|
| Farmers Friend Inc.: | $38,701.50 |
| Class Produce Group LLC: | $26,548.01 |
| East Coast Brokers & Packers: | $21,584.67 |
| Monterey Mushrooms, Inc.: | $65,355.02 |
| Delmonte: | $20,609.42 |
| C.H. Robinson | $ 2,827.21 |

As to the remaining eleven plaintiffs,[2] defendant Millison, intervener defendant

**2.** Originally, there were two additional plaintiffs asserting PACA trust rights. One claimant was dismissed pursuant to this court's Order dated February 17, 2011. (Dkt. No. 180.) The other was dismissed pursuant to an Agreed Dismissal Order, entered on March 10, 2011. (Dkt. No. 183.)

SunTrust, or both, advance legal challenges to the validity of the claimed PACA trust rights.

## C. Primary Objection: Legal Effect of Extension of Credit for 30 days or Less Absent Prior Written Agreement

█ Although defendants Millison and SunTrust advance several legal and factual challenges to the claimants' assertions of PACA trust rights, the overriding issue in this case is the legal impact of a produce supplier extending credit for periods between 11 and 30 days absent a prior written agreement to modify the default 10–day PACA credit period. As set forth above, the PACA statute and regulations include two clear prerequisites to qualify for trust coverage: (a) timely notice of the assertion of PACA trust rights; and (b) credit cannot be extended beyond 30 days. In addition to these clear prerequisites, the statute and regulations further state that agreements to extend credit beyond 10 days *must be in writing* and be executed *prior to* the relevant produce transaction. However, what both the statute and regulations lack is a reference to *the effect* of failing to comply with such provision. Defendants Millison and Sun Trust argue that the extension of credit for periods between 11 and 30 days without a prior written agreement automatically invalidates otherwise valid PACA trust rights. In contrast, plaintiffs argue that such failure merely renders any non-conforming agreement unenforceable, resulting in an automatic reversion to the default 10–day PACA credit period. In resolving this dispute, the court begins, as always, with the language of the statute and regulations.

Beginning with the language of the statute, a claim for PACA rights must be timely noticed. The PACA statute does not mince words with respect to the result of failing to comply with such requirement, if it is not met: "The unpaid supplier, seller, or agent *shall lose the benefits of such trust* ...." 7 U.S.C. § 499e(c)(2), (c)(3) (emphasis added). Similarly, the regulations establish 30 days as the maximum permissible period to extend credit. Like the statute, the regulations are clear regarding the failure to comply with such limitation: The maximum time that parties can agree to extend payment such that seller can *still qualify for coverage under the trust* is 30 days after receipt and acceptance" of produce. 7 C.F.R. § 46.46(e)(2) (emphasis added).

In stark contrast to such express prerequisites, neither the statute nor the regulations discuss the impact of the seller's *and buyer's* failure to reduce an extended credit agreement to writing. A careful review of the so-called "writing requirement" as set forth in the PACA statute reveals that Congress only referenced a writing extending payment terms within the context of defining the *alternative notice period.* Specifically, the statute defines timely notice as notice provided "within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary [*or* ] (ii) after expiration of such other time by which payment must be made, *as the parties have expressly agreed to in writing before entering into the transaction* ...." 7 U.S.C. § 499e(c)(3) (emphasis added). A plain reading of such language is that if the parties have not "expressly agreed in writing" to extend payment terms, then the second notice provision simply cannot apply. Accordingly, in such circumstances, the statutory text indicates that notice remains "timely" if made in compliance with the default notice period set forth in subsection (i). As, here, there is no allegation that any remaining claimant failed to timely provide notice within the default period, there appears to be no stat-

utory basis for finding that the failure to reduce to writing an agreement to extend payment terms within the permissible 11–30 day window rises to the level of a disqualifying event.

■■■ The regulations likewise discuss the "writing requirement" in the notice context, 7 C.F.R. § 46.46(f)(2)(ii); however, they also include a provision defining "prompt payment" that discusses prior written agreements and that provision uses mandatory language, stating: "Parties who elect to use different times for payment *must* reduce their agreement to writing before entering into the transaction...." 7 C.F.R. § 46.46(e)(1) (emphasis added). Although such provision uses the mandatory term "must," it does not indicate whether failure to comply with such rule: (a) renders non-conforming prompt payment agreements unenforceable; or (b) automatically invalidates timely noticed and otherwise valid PACA claims. If the regulatory provision setting forth the writing requirement is viewed in isolation, it could be deemed a prerequisite to obtaining trust protection. However, when considering such language in the context of the entire regulatory and statutory scheme, it appears more appropriately categorized as a provision establishing the unenforceability of non-conforming agreements. Notably, not only does the statute make clear that Congress knew how to draft a mandatory requirement that, if violated, invalidates PACA trust protections, but the regulations make clear that the USDA similarly knew how to draft a mandatory requirement, as the *next two subsections* of the regulations following the "writing requirement" discuss parameters that are expressly identified as necessary prerequisites to qualifying for trust pro-

tection. *Compare* 7 C.F.R. § 46.46(e)(1) (indicating that agreements to modify payment periods must be in writing, but failing to state the penalty for non-compliance), *with* 7 C.F.R. § 46.46(e)(2) (stating that to "*qualify for coverage* under the trust," a seller may not extend credit beyond 30 days), and 7 C.F.R. § 46.46(e)(3) ("The trust provisions *do not apply to* [listed] transactions...."). "'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Johnson v. United States,* —— U.S. ——, 130 S.Ct. 1265, 1275, 176 L.Ed.2d 1 (2010) (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)); *see also Tasker v. DHL Retirement Savings Plan,* 621 F.3d 34, 42 (1st Cir.2010) (noting that rules of statutory construction are "fully transferable to the construction of regulations") (internal citations omitted). Accordingly, the court rejects defendants' characterization of the "writing requirement" set forth in subsection (e)(1) of the regulations as a prerequisite to qualifying for PACA trust rights.

Case law from within the Fourth Circuit appears to support the above interpretation that the failure to reduce to writing a permissible agreement[3] extending credit terms simply results in the unenforceability of such agreement. First, in providing a background of portions of the PACA regulatory scheme relevant to a case before the court, the Fourth Circuit explained:

> Relevant in the present case are the PACA regulations designed to insure that a produce supplier seeking the pro-

---

**3.** Here, as none of the plaintiffs sold produce on credit for terms in excess of 30 days, the court need not address the legal impact of an "impermissible" oral agreement that purports to extend credit beyond 30 days.

tection of the statutory trust is indeed a "short-term" creditor. PACA requires that buyers make "full payment promptly" for all merchandise received from produce suppliers, 7 U.S.C. § 499b(4), and imposes civil liability on buyers who default on their payment obligations. *Id.*, § 499e(a). In most cases, buyers must pay for shipped commodities within ten days after receipt of the produce. *See* 7 C.F.R. § 46.2(aa). Buyers and sellers may agree to allow more time, but must reduce any such agreement to writing. *Id.*, § 46.2(aa)(11). *None of these provisions, of course, directly implicate a seller's eligibility for the protection of the PACA statutory trust.* The regulations further provide, however, that "[t]he maximum time for payment for a shipment to which a seller, supplier, or agent can agree *and still qualify for coverage under the trust* is 30 days after receipt and acceptance of the commodities." 7 C.F.R. § 46.46(f)(2).

*In re Davis Distributors, Inc.*, 861 F.2d 416, 417–18 (4th Cir.1988) (first emphasis added). Even if the Fourth Circuit's statements excerpted above are not controlling and are instead considered dicta because *Davis* involved a prior written agreement extending credit terms, such discussion of the regulations labeled by the Fourth Circuit as "relevant" nevertheless offers persuasive support for this court's similar interpretation of the same regulations. Second, in *Nickey Gregory Co. v. AgriCap, LLC*, 592 F.Supp.2d 862 (D.S.C. 2008), *affirmed in part and vacated in part on other grounds*, the district court recently explained:

> [Defendant] argues there must be a prior written payment term agreement ... showing that payment was due in 21 days for Plaintiffs to qualify for trust protection.... However, such a written agreement is not required for PACA

trust eligibility for the reasons explained by the court in *In re Atlanta Egg & Produce, Inc.*, 321 B.R. 746, 755 (N.D.Ga.2005).

> With respect to the remaining invoices, i.e., those that included payment terms other than 10 days, this Court also concludes that those sellers properly preserved the benefits of the trust. While the Court agrees with Appellants that PACA requires any agreement to extend payment terms to be in writing, *see e.g.*, 7 U.S.C. § 499e(c)(3)(ii), in this case, it is undisputed that there was no such agreement. Because there was no agreement-oral or written-to extend the payment terms beyond the standard 10 days, the listing of payment terms other than 10 days had no legal relevance. *No provision of the statute or regulations disqualifies a seller from PACA trust benefits simply because the seller unilaterally changed the payment term on the invoice to a period other than the standard 10–day period, but in no circumstance greater than 30 days.* These sellers satisfied the notice requirement by including the requisite language on the face of their invoices ..., *see* 7 U.S.C. § 499e(c)(4), and the payment period on the invoices did not exceed thirty days. In compliance with 7 U.S.C. § 499e(c)(4), these sellers, therefore, properly preserved their PACA trust benefits.

*Id.* at 871–72 (quoting *In re Atlanta Egg*, 321 B.R. at 755). Third, in *Stowe Potato Sales, Inc. v. Terry's, Inc.*, 224 B.R. 329 (W.D.Va.1998), the disputed produce sales were made without a prior written agreement, yet the invoices purported to extend credit terms to 30 days. The district court nevertheless held that the invoices giving notice of an intent to preserve PACA trust

benefits were sufficient to preserve PACA rights because "the payment terms can be extended beyond [the ten-day period] established by regulation only by ... a written agreement." *Id.* at 332–33.

Several circuit courts that have addressed this issue have likewise interpreted the PACA "writing requirement" as merely rendering unenforceable non-compliant agreements to extend credit for 11 to 30 days. The first federal circuit to squarely address this issue was the Eighth Circuit in *Hull Co. v. Hauser's Foods, Inc.,* 924 F.2d 777, 782 (8th Cir.1991), where the court held that oral agreements to extend payment terms were unenforceable under PACA because, among other reasons, "it would be incongruous to disregard oral agreements for purposes of enforcing PACA but recognize them for the purpose of voiding the sellers' protection under the trust." *Id.* at 782. Accordingly, "notwithstanding the oral agreements, [the] sellers retained the right to demand payment within ten days and seek trust protection under PACA." *Id.* The Eighth Circuit further noted that PACA was "remedial legislation [which] should be given a liberal construction to effectuate its statutory purpose" and that the court's ruling in *Hull* "best promotes the legislative scheme and the general purpose Congress has manifested." *Id.*

Providing a more in depth analysis of the PACA statute and regulations, in *Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197 (3d Cir.1998), the Third Circuit explained:

> According to [defendant], the plain language of section 499e(c)(3), in particular Congress's use of the term "shall," unambiguously requires that an agreement to extend the payment term be in writing in order for the seller to preserve its PACA trust benefits. This reading overstates what the subsection requires.

The statute provides that an unpaid seller "shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of such trust." 7 U.S.C. § 499e(c)(3) (emphasis added). The remainder of that sentence establishes the time period in which such notice must be given. *In the context of defining timely notification, the statute then provides that agreements to extend payment terms must be in writing* .... See 7 U.S.C. § 499e(c)(3); *see also* 7 C.F.R. § 46.2(aa)(11).

Thus, Congress, using the verb "shall," unambiguously intended that a seller timely notify the buyer of its intent to preserve its rights to PACA trust benefits. *The plain and unambiguous language of the section does not provide, however, that a written agreement is a precondition of being entitled to the statutory trust benefits. Rather, the requirement is relevant to assessing when prompt payment is due and therefore when notice is timely.*

The plain language of the regulations supports this reading of the statute. The regulations first mention the writing requirement in the context of defining prompt payment.... [T]he regulations provide that, unless agreed otherwise in writing, prompt payment is defined as payment within ten days of the buyer's acceptance of the produce. *See* 7 C.F.R. § 46.2(aa)(5)....

\* \* \*

As in the statute, section (e)(1) of this regulation discusses the writing requirement in the context of defining prompt payment for a given transaction. Section (e)(2) explicitly provides that a seller is disqualified from receiving trust benefits if it agrees to extend the payment term longer than 30 days from the buyer's acceptance of the produce. *The*

*existence of such an explicit disqualification supports our view that the writing requirement is not a prerequisite to eligibility to participate in the PACA trust.*

\* \* \*

The plain language of the statute and regulations requires that an agreement establishing a "prompt payment" period other than that established in the regulations must be in writing. The plain language also provides that an unpaid seller loses its right to PACA trust benefits if (1) it does not timely notify the buyer of its intent to preserve that right or (2) it agrees to a payment period beyond 30 days. Because we liberally interpret PACA to further its remedial purposes of reducing the burden on commerce and protecting unpaid sellers, *we find that the writing requirement relates to the enforceability of an agreement to extend a payment term, but does not disqualify an unpaid seller from receiving trust benefits.*

[Plaintiffs] satisfied the notice requirement by including the requisite language on the face of their invoices . . ., *see* 7 U.S.C. § 499e(c)(4), and neither party agreed to a payment period over 30 days. Their failure to reduce their oral agreements with respect to the payment term to writing does not disqualify them, and they therefore are entitled to share in a pro-rata distribution of the statutory trust res until they receive payment in full.

*Id.* at 203–04 (emphasis added). More recently, in 2008, the Fifth Circuit first held that *post-transaction* agreements to extend credit beyond 30 days can invalidate PACA trust rights and then analyzed the effect of an oral post-transaction oral agreement extending terms, holding:

The question of whether an oral agreement is sufficient to effect a waiver or forfeiture of PACA trust rights is an issue of first impression in our circuit. However, three of the four circuits that have expressly addressed the issue have held that only written agreements can effect such a waiver. *See Patterson,* 307 F.3d at 669–70; *Idahoan Fresh,* 157 F.3d at 205; *Hull Co. v. Hauser's Foods, Inc.,* 924 F.2d 777, 781–82 (8th Cir.1991). To date, the Second Circuit is the only one to hold that oral agreements suffice to waive PACA trust protection. *Am. Banana,* 362 F.3d at 46–47. We agree with that majority of circuits and adopt the rule that waiver or forfeiture of PACA trust rights by entering into an extension agreement requires an agreement in writing.

*Bocchi Americas Associates Inc v. Commerce Fresh Marketing Inc.,* 515 F.3d 383, 390–91 (5th Cir.2008) (emphasis added); *see Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.,* 307 F.3d 666, 670 (7th Cir.2002) (emphasis added) ("[I]f the parties had no agreement at all to extend the time for payment, or if any such agreement was merely oral, then PACA remains in force.").

As set forth above, this court's interpretation of the statute and regulations is in line with the majority rule. Furthermore, a careful review of the Second Circuit opinion in *American Banana* reveals that the Second Circuit did not reject the majority rule entirely, but instead limited its analysis to oral agreements that *violate PACA's clear prerequisite* that payment terms not be extended beyond 30 days. *See American Banana Co. v. Republic Nat. Bank of New York, N.A.,* 362 F.3d 33, 46 (2d Cir.2004) (rejecting the Eight Circuit's finding that *"all* oral agreements concerning payment periods," including those allowing for payment beyond 30 days, "are disregarded for purposes of PACA liability . . .") (emphasis added). In

addressing the impact of oral agreements that violate PACA's express 30 day maximum credit term, the Second Circuit stated:

> We find nothing in the text of PACA or in its regulations which requires that a *provable post-default agreement extending a payment period beyond thirty days must, without exception, be reduced to writing before it will disqualify a seller from PACA's trust protection.* The regulations merely provide that "[p]arties who elect to use different times of payment ... must reduce their agreement to writing before entering into the transaction." 7 C.F.R. § 46.2(aa). In view of Congress's clearly expressed intention to extend trust protection solely to cash and short-term credit transactions, *see* 7 U.S.C. § 499e(c); 7 C.F.R. §§ 46.46(e), 46.2(aa), we cannot interpret this regulation to mean that parties are free to enter into agreements that violate PACA's prompt payment rules as long as they do not reduce their agreements to writing.
>
> Rather, we conclude that a failure to reduce to writing an agreement that violates PACA, should not result in the preservation of the trust, *where the same agreement if memorialized, would have resulted in forfeiture of such protection.* To hold otherwise would yield the unacceptable result of preserving trust protection for a seller who reaches an agreement containing a payment period exceeding thirty days and performs thereunder so long as the seller does not reduce the agreement to writing. Accordingly, we hold that where, as here, *a seller agrees-orally or in writing-to a payment period exceeding thirty days, it forfeits trust protection.*

*Id.* at 46–47 (emphasis added). Accordingly, there does not appear to be any circuit courts that have *invalidated for lack of a writing* a timely noticed PACA claim associated with a permissible short-term extension of credit for no more than 30 days.

In addition to this court's analysis of the text of the statute and regulations, as well as the case law supporting such interpretation, the court acknowledges PACA's remedial nature. As recognized by the Fourth Circuit in a case interpreting the Federal Coal Mine Health & Safety Act of 1969, "the Act's remedial nature instructs us to interpret its provisions favorably toward miners." *Consolidation Coal Co. v. Williams,* 453 F.3d 609, 618 (4th Cir.2006). Accordingly, here, "[k]eeping [PACA's] remedial purpose in mind," *id.,* the court finds that the analysis set forth herein comports with the goal of the statute of protecting produce sellers that: (a) timely notice their intent to preserve their PACA rights; and (b) comply with PACA's requirement that only short-term credit is extended. Notably, the willingness of a produce seller to permit a buyer to pay in 15 or 21 days, as opposed to 10 days, solely benefits the buyer. PACA's remedial purpose of protecting produce sellers appears in conflict with an interpretation that would allow a buyer to invalidate a powerful PACA trust merely by convincing a seller to extend payment terms a few extra days. *See id.* (quoting *Labelle Processing Co. v. Swarrow,* 72 F.3d 308, 318 (3d Cir. 1995)) (" 'Courts should liberally construe remedial legislation, such as the Act, so as to include the largest number of claimants within its entitlement provisions.' "); *Brown & Williamson Tobacco Corp. v. Food & Drug Admin.,* 153 F.3d 155, 179 (4th Cir.1998) (quoting *United States v. Dotterweich,* 320 U.S. 277, 280, 64 S.Ct. 134, 88 L.Ed. 48 (1943)) ("In construing remedial legislation, we must be ever mindful of the salutary purpose of the statute," and its purposes " 'should infuse construction of the legislation if it is to be treated as a working instrument of govern-

ment and not merely as a collection of English words.' ").

■ Although this court acknowledges that the burden of entering into a pre-transaction written agreement is relatively slight, defendants' objections to the claims asserted by Procacci Brothers Sales Corp. ("Procacci Brothers") and T & M Distributors, Inc. ("T & M Distributors") demonstrate a seemingly unintended hardship that would result if this court adopted defendants' interpretation of PACA. Here, there is no suggestion that Procacci Brothers or T & M Distributors ever *agreed* to extend payment terms beyond 10 days, and all their invoices before the court state on their face that payment is due in 10 days. However, such invoices were mailed separately from the perishable produce, and often dated a day or two after the produce shipment was accepted by Let–Us Produce. Credit was thus technically extended for 11 or 12 days. Defendants therefore contend that because there is no written agreement permitting such minimal extensions, which may not even have been intentional, the claimants' PACA rights are automatically invalidated. Obviously, such a result is in stark conflict with the remedial purpose of PACA, and it therefore provides further support for this court's interpretation of the statutory and regulatory scheme.

Finally, although not controlling, the court notes that the following opinions in PACA proceedings before USDA administrative law judges appear to provide support for this court's conclusions. *See In re: Coronet Foods, Inc.*, 65 Agric. Dec. 474, 479 (U.S.D.A.2006) ("Oral and implied agreements are not a possible defense to disciplinary action under the PACA [for failure to timely pay] because the agency has specified times for payment through the administrative rulemaking."); *In Re: Mertonas Karpathou Produce, Inc., and*

*Evaggelos G. Gergatsoulis f/d/a Mertonas Karpathou Produce Co.*, 51 Agric. Dec. 792, 800 (U.S.D.A.1992) ("Respondents have offered to present evidence of oral agreements with [sellers] that allow for payment within 21 days rather than the 10 days required by regulation. However, the regulations clearly require that payment times longer than 10 days must be 'in writing before entering into the transaction.' 7 C.F.R. s 46.2(aa)(11). Since Respondents concede that there are no written agreements ... [r]espondents failed to make timely payment in connection with these amounts ....") (internal citations omitted).

Even more compelling than the above are administrative opinions of the USDA "Judicial Officer" who hears appeals of ALJ decisions and has final administrative authority to decide USDA cases. In *In Re: The Caito Produce Co.*, 48 Agric. Dec. 602 (U.S.D.A. 1989), the Judicial Officer noted that "three of the Department's five ALJs have just recently come to the Department, and the initial decision in this case by one of the new ALJs suggests that he has a deep and basic disagreement with the Department's policy in PACA payment-violation cases." *Id.* at 604. In an apparent effort to explain the USDA's policy to the new ALJs, the Judicial Officer's decision "set forth at length the reasons underlying the Department's policy" and further noted that "[t]he conclusions in this decision are largely taken verbatim from prior decisions." *Id.* In explaining the USDA's well-established PACA policy, the Judicial Officer stated:

> The regulations as to prompt payment for produce were significantly amended in 1972, and again in 1984. . . .

> [In 1972] the regulations were amended to require an express agreement for delayed payment at the time the contract is made. . . .

[In 1984] the prompt payment regulations were amended as a result of the statutory trust legislation to require not only an express agreement at the time the contract is made, but, also, to require that the agreement be in writing. . . .

*In the present case, respondent's agreements for deferred payment were not in writing,* and were frequently made after the contract was made and the produce was delivered. That is, in many instances, after respondent was heavily indebted to the produce sellers, the sellers agreed to a schedule of delayed payments to be made by respondent. *Respondent's violations were not negated by agreements not in writing or made after the transactions were consummated.*

*Id.* at 609–10 (emphasis added).

■ Summarizing the administrative decisions above, the USDA has repeatedly held that absent a *prior written agreement* modifying payment terms, a produce seller can enforce PACA's default 10–day payment term regardless of the existence of non-complying agreements to extend payment terms. Accordingly, the failure to reduce to writing an agreement to extend payment terms to no more than 30 days does not invalidate PACA rights, but instead goes solely to the enforceability of such non-complying agreement.[4]

■ For the many reasons set forth above, the court finds that non-conforming agreements to extend payment terms for more than 10 days, but in no case more than 30 days, do not invalidate timely noticed and otherwise valid PACA trust rights.

### D. Objection to Font Size of PACA Invoice Notice

■ The PACA regulations provide that if notice is to be made by invoice, the following notice must appear on produce invoices:

The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 C.F.R. § 46.46(f)(3)(i). Here, intervener defendant Sun Trust argues that the text of the notice provision on some of the copies of produce invoices before the court is so small that it fails to effectuate notice. Sun Trust, however, does not cite any law on such point, nor is its claim otherwise compelling since not only could the court read the notices, but there is no assertion

---

**4.** The court additionally notes that Congress' reference to the writing requirement *in the context* of the notice requirement makes sense based on the *prior version* of the PACA regulatory scheme. Notably, until the alternative provision for "Invoice Notice" was created, notice of intent to preserve PACA rights was required to be sent to the buyer and to the USDA within 30 days of payment becoming due. Accordingly, as any agreement to modify the payment period *necessarily modified the notice period,* the only reliable way to determine whether notice was timely made was to require that all agreements modifying payment terms be in writing. Subsequent to the modification to PACA that created the procedure for "Invoice Notice," it appears far less critical whether parties, prior to a transaction, memorialize credit terms in a written instrument as the mandatory notice requirement is satisfied *prior to* the expiration of the credit term. Although this court's ruling is not predicated on the evolution of the regulatory scheme, such evolution appears to lend further support to the court's analysis herein.

by defendant Millison or any other Let–Us Produce officer or employee that the original invoices were not legible due to the small font size. Accordingly, as stated on the record at the hearing, the court rejects this limited attack on the effectiveness of notice in this case.

### E. Objection regarding The Let–Us Produce Operating Account

 Prior to the hearing, there was some dispute regarding whether all of the funds in the Let–Us Produce operating account were appropriately earmarked for plaintiffs deemed to have valid PACA claims. More specifically, Sun Trust alleged that some of the money in such bank account represented the proceeds of beverage sales which are not "produce" and thus do not qualify for PACA protection. At the hearing on this matter, defendants conceded that attempting to split out and challenge the presumably minute percentage of the operating account that represents proceeds from beverage sales would not be cost effective. The court recognizes the apparent accuracy of such statement in light of the broad and "floating" nature of the PACA trust. Notably, even if it was clear that a specific dollar figure flowed into the account from a payment on *beverage* accounts receivable, unless defendants could demonstrate that the same beverages were not purchased with proceeds from prior produce sales, the commingled fund would remain subject to the PACA trust. *See Nickey Gregory Co. v. Agri-Cap, LLC*, 597 F.3d 591, 595 (4th Cir.2010) (indicating that a secured lender's interest is "trumped by Congress' policy choice to give produce suppliers a favored creditor position, not only in the produce they sell, but also in derivative products and commingled proceeds in the hands of PACA

dealers ..."); *Sam Wang Produce, Inc. v. EE Mart FC, LLC*, No. 1:09cv12, 2010 WL 605082, at *3 (E.D.Va. Feb. 16, 2010) (unpublished) ("Courts have established that the burden of proof is on the party opposing a claim that a PACA buyer's assets are subject to a PACA trust to demonstrate which particular assets are not part of the trust."); *In re Kornblum & Co., Inc.*, 81 F.3d 280, 287 (2d Cir.1996) (finding that the debtor "bear[s] the burden to establish either that; (1) no PACA trust existed when the [business assets] were purchased; (2) even though a PACA trust existed at that time, the [business assets] were not purchased with trust assets; or (3) although a PACA trust existed when the [business assets] were purchased and the [business assets] were purchased with trust assets [the debtor] thereafter paid all unpaid sellers in full ... thereby terminating the trust"). Accordingly, the court finds that, other than the payment of reasonable collection expenses, the entirety of the funds in the operating account are PACA trust assets.[5]

### F. Objection to Enforceability of Written Contracts

The majority of the claimants seeking PACA protection in this action admittedly have no prior written agreements with defendant Let–Us Produce. However, as discussed above, such claimants nevertheless qualify for PACA trust benefits as such sellers did not extend credit beyond 30 days, and they notified defendant Let–Us Produce of their intent to claim PACA rights through timely invoice notice. Two claimants, however, assert that they entered into prior written agreements to extend the payment terms to periods not greater than 30 days. Defendants chal-

---

5. A second account, the "Escrow Account," has been opened to preserve the proceeds of the sale of Let–Us Produce's assets, including

Furniture, Fixtures and Equipment. The court's ruling herein focuses on the funds in the Let–Us Produce operating account.

lenge the enforceability of both written contracts.

### (i) Produce Alliance Contract

First, with respect to the Produce Alliance contract, defendants argue that such contract is unenforceable because the Let–Us Produce employee that signed such contract lacked actual or apparent authority to bind the company. According to Let–Us Produce, such individual was not, as represented, the "CFO" of Let–Us Produce and was instead a "receivables clerk." Second, defendants argue that even if the contract was enforceable at some point in the past, because Let–Us Produce failed to make timely payments according to contract terms it was no longer in "Good Standing," rendering the contract unenforceable. Finally, defendants argue that Let–Us Produce has the right to offset against Produce Alliance based on "side agreements" providing rebates that allegedly exceed Produce Alliance's PACA claim.

As to the overall validity of Produce Alliance's PACA claim, the court finds that the enforceability of the contract is largely irrelevant. If the contract is deemed enforceable, because Produce Alliance provided timely notice of its intent to preserve PACA rights and expressly listed the agreed upon payment terms on its invoices, its PACA trust claim is valid. If, in contrast, the written contract is unenforceable due to a lack of apparent authority of the signatory or default, as discussed at length above in Part II.C, non-conforming agreements providing short term (30 days or less) credit do not invalidate timely noticed PACA rights.

Notwithstanding the fact that the contract's enforceability has no real bearing on the validity of Produce Alliance's PACA claim, its enforceability may have an impact on the actual dollar amount of Produce Alliance's PACA claim with respect to defendants' claim for rebates. Although defendants have not pointed to any evidence regarding such alleged "side-agreements," the court will withhold its ruling on the enforceability of the contract until the facts can be further developed on this point.[6]

### (ii) Poppell's Produce Contract

Defendants offer two challenges to the contract between Let–Us Produce and Poppell's Produce, Inc. ("Poppell's Produce"). First, defendants argue that the contract impermissibly extends credit beyond 30 days, thereby invaliding Poppell's Produce's PACA rights. Second, and alternatively, defendants argue that because the credit term set forth in the written agreement (21 days) is not stated on the face of the invoices at issue, Poppell's Produce failed to preserve its PACA rights.

Considering first the claim that the payment terms of the contract impermissibly extend credit beyond 30 days, the court rejects such characterization of the contract. The Fourth Circuit in *Davis* held that if a written contract purports to extend credit for 30 days or less, but expressly defers default or defers the seller's right to pursue remedies for more than 30 days, such contract violates PACA's 30–day short term credit requirement. *Davis,* 861 F.2d at 419. The written contract in *Davis* stated:

---

6. As the court has declared Produce Alliance's PACA claim otherwise *valid,* the court would obviously welcome an agreement between Produce Alliance and defendants regarding the appropriate *amount* of Produce Alliance's valid PACA claim. Having a mini-trial on such matter may not be desirable from any party's perspective as it will only further delay, and increase the expense of, the orderly liquidation of Let–Us Produce's assets.

*Credit Terms.* Seller hereby agrees to extend further credit to Buyer upon Buyer's purchase of mushrooms from Seller, subject to the following limitations: (i) Buyer's account with Seller shall at no time exceed a total of Three Hundred Fifty Thousand ($350,000.00) Dollars; and *(ii) Buyer shall pay all invoices in full within thirty (30) days of the date of the invoice.* In the event that Buyer's account balance exceeds the foregoing limitation *or if Buyer fails to pay any invoice in full within sixty (60) days of the date of such invoice. Buyer shall be in default under this Agreement, and Seller shall be entitled to exercise all of the remedies set forth herein, as well as any remedies which may be available at law or in equity,* and especially any and all remedies available under Article 9 of the Uniform Commercial Code.

*Id.* at 418. In finding that such language impermissibly extended credit beyond 30 days, the Fourth Circuit held:

> Reading the relevant provisions together, one cannot escape the conclusion that there simply is no practical significance whatsoever to any failure by Davis to remit payment within thirty days. The Agreement explicitly postpones, until sixty days have passed, not only Davis' actual "default" but also Wilson's right to exercise *any* of its legal or equitable remedies.

*Id.* at 419. Here, the Poppell's Produce contract expressly extends credit for 21 days. It then states that "[a]ll accounts with open credit to exceed 45 days are placed on hold" and "[a]ll accounts with open credit to exceed 60 days will be filed with PACA for legal collection." Notably,

unlike the contract in *Davis,* the Poppell's Produce contract does *not* state that default is postponed or that seller cannot exercise any legal or equitable remedies until sometime after 30 days. Rather, the language merely states that *all* accounts *will be* frozen after credit exceeds 45 days and that *all* accounts *will be* filed with PACA after credit exceeds 60 days. Nowhere does the contract suggest that a buyer with credit outstanding for 22 days is not in default, or that Poppell's Produce *must* wait more than 30 days to pursue PACA rights or any other legal or equitable remedies. Accordingly, the court rejects defendants' assertion that the Poppell's Produce contract impermissibly extends credit beyond 30 days.

Considering next Poppell's Produce's failure to include the previously agreed upon credit terms on its invoices, it appears appropriate to postpone the resolution of such issue until the facts are better developed, and the law is fully briefed by the parties. Although it is not entirely clear from the affidavit before the court, it appears that Poppell's Produce contends that the inclusion of payment terms "COD," rather than "21 days," on the disputed invoices was simply an error carried over from pre-contract sales to Let–Us Produce when produce was in fact sold COD. However, even if assumed a mistake, the parties have not fully briefed the legal impact of such mistake. The court's own review of relevant case law reveals that more than one circuit has held that, once a valid pre-transaction PACA contract has been executed, the seller's failure to reproduce the credit terms on invoices invalidates otherwise valid PACA trust claims.[7] *See Overton Distributors, Inc. v. Heritage*

---

7. Such authority, which requires strict adherence to the requirements in PACA, may or may not be in conflict with the circuit court cases discussed above wherein courts repeatedly held that oral contracts to extend short-term credit from 11–30 days are unenforceable and do not invalidate otherwise valid PACA rights.

*Bank,* 340 F.3d 361, 367 (6th Cir.2003) (finding that the produce seller lost PACA trust rights by failing to include contractually agreed upon credit terms on invoices); *In re San Joaquin Food Service, Inc.,* 958 F.2d 938 (9th Cir.1992) (same). Accordingly, the court defers ruling on the validity of Poppell's Produce's PACA claim.

### III. Impact of Above Rulings

The court's finding of validity as to claims asserted by nearly all of the plaintiffs results in valid PACA claims that exceed the funds held in the Let–Us Produce operating account. Although the instant motion seeks an early disbursement from such account: (a) the lack of clarity as to the amount currently in the operating account and/or the amount necessary to be reserved for future collection costs, and (b) the apparent disputes regarding some claimant's asserted rights to interest and fees, both create obstacles to an immediate distribution. That said, in compliance with the procedures and goals expressly set forth in the Claims Procedure Order, an accelerated approach to resolving such outstanding matters is warranted.

Accordingly, counsel for plaintiffs are instructed to submit to the court an updated PACA Claims chart, incorporating the court's ruling herein, within 14 days of the date of this Order. Such chart shall include the current balance in the operating account, the proposed amount to be reserved for collection/common expenses, and the amount of each claimant's PACA trust claim. Similar to the original PACA chart, the updated chart shall clearly des-

ignate the claim amounts that are "undisputed" and any amounts that remain "disputed." [8] Prior to submitting the amended claims chart, plaintiffs' counsel *shall confer* with counsel for defendants. As it appears to be in the interest of all parties to avoid additional delays, all counsel are encouraged to come to an agreement regarding all items on the chart that can be resolved (ex: amount to be held in reserves, etc.). Ideally, after opposing counsel confer, a stipulated chart can be filed because, with the exception of the PACA claims advanced by Poppell's Produce and Produce Alliance, it appears that the court's ruling herein resolves all other major disputes regarding the validity of the PACA claims. In following with the agreed goals of an "orderly liquidation of Let–Us Produce, Inc.'s PACA Trust Assets" and to "maximize the recovery for all unpaid beneficiaries of the PACA trust and SunTrust Bank," the parties are encouraged to resolve whatever disputes that they can, and to submit a single updated claims chart. (Claims Procedure Order 3, Dkt. No. 32.)

Should the parties be unable to reach a consensus regarding a stipulated PACA chart, plaintiffs shall file their updated chart within 14 days and defendants shall, within 7 days of the filing of plaintiffs' chart, file their version of the PACA trust chart along with an explanation of the disputes that could not be resolved. Plaintiffs may, if they choose, file a brief in response within 3 days of the filing of defendants' chart and explanatory brief.[9]

---

**8.** "Disputed claims" must be matters previously raised that remain unresolved. The filing of a second claims chart is not an opportunity for defendants to advance new challenges to claimants' assertion of PACA trust rights.

**9.** It appeared from the parties' representations at the conclusion of the hearing that although discovery will likely be necessary

with respect to whether PACA trust claimants have a priority interest in money held in the Escrow Account, no formal discovery is necessary in order to: (a) fully resolve the validity of the PACA claims in dispute; and (b) determine the appropriate pro-rata distribution to PACA claimants from the *operating* account. Should formal discovery be necessary to resolve the disputes regarding the

As a final note, the court's ruling herein with respect to Poppell's Produce and Produce Alliance raises the question of whether a conflict of interest now exists. Counsel for Poppell's Produce and Produce Alliance should consider such matter and take whatever appropriate steps may be necessary.

## IV. Conclusion

For the reasons set forth above, the motion for interim distribution is **GRANTED,** in part, as this court rules in favor of numerous plaintiffs regarding the validity of their PACA trust claims. The motion is **DENIED,** in part, to the extent that plaintiffs seek an immediate distribution of funds from the Let–Us Produce Operating Account.

Plaintiffs are hereby **ORDERED** to submit to the court an updated "PACA Trust Chart" incorporating the court's rulings herein. Such chart shall be filed within **fourteen (14) days** of the date of this order and shall comply with the requirements set forth in the preceding section of this Order. Prior to submitting such chart, plaintiffs' counsel shall confer with counsel for defendants and, ideally, the updated chart is to be submitted with the agreement of all parties. In the alternative, should the parties be unable to reach an agreement as to a single chart, the defendants that dispute the accuracy of plaintiffs' chart shall submit their own chart, with an explanation as to the discrepancies, within **seven (7) days** of the filing of plaintiffs' chart. Plaintiffs may then file a responsive brief addressing such discrepancies within **three (3) days** of the filing of defendants' chart and explanatory brief.

After receiving the updated PACA claims chart(s), the court will contact counsel to schedule a telephone conference call or hearing to address discrepancies, if any, and to determine whether an evidentiary hearing and/or formal discovery is necessary to resolve the outstanding issues in this case.

The Clerk is **REQUESTED** to send copies of this Order to all counsel of record.

**IT IS SO ORDERED.**

alleged, but unsupported, Produce Alliance "rebates" or the validity of Poppell's Produce's claim, the court will, after receiving the amended claims chart(s), establish an expedited schedule for discovery in order to resolve such issues.